FILED
CLERK
5:25 pm, Mar 22, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

          -against-                              **MEMORANDUM AND ORDER**
                                                    22 MJ 272 (GRB)
OMARI BLACKMAN,

          Defendant.
----------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

      Before the undersigned is an appeal of a bail determination by Magistrate Judge Wicks in this prosecution, involving charges of distribution of child pornography. After a hearing at the initial appearance, Judge Wicks entered an Order of Detention Pending Trial. The next day, defendant appealed that determination to the undersigned, seeking release. Upon *de novo* review, the Court finds that, for the reasons that follow, detention is warranted, the appeal denied, and Judge Wicks' detention order will stand pending trial or further application as appropriate.

      **The Complaint**

      By sworn complaint filed and dated March 9, 2022, the Government charged the 20-year old defendant, who has no prior criminal history, with violating Title 18, United States Code, Section 2252(a)(2). DE 1. According to the complaint, a special agent of the Department of Homeland Security, acting in an undercover capacity, observed online statements traceable to the defendant which were consistent with the creation and trafficking of child pornography as well as cyberstalking of minors. *Id.* at ¶ 2. These included communications offering to trade specific obscene images featuring minors. *Id.* at ¶ 3. In direct communication with the undercover agent, the defendant stated that he had been persuading children he met online to create and capture these images. *Id.* According to the defendant, his techniques to convince the minors to create and share these images included befriending

1

them while pretending to be a peer and, in other instances, through threats and extortion. *Id.* The complaint further alleges that the defendant claimed to have used extortionate tactics to compel minors to engage in and video acts of bestiality. *Id.* at ¶ 4. These statements were corroborated by, in part, photos and videos that defendant provided to the undercover officer of apparent minors engaging in lewd acts. *Id.* at ¶ 5.

Based on this information, on March 3, 2022, Magistrate Judge Tiscione issued a search warrant for the premises in which defendant resides, which was executed on March 9. *Id.* at ¶ 7. During the search, according to the complaint, defendant made statements to the agents that "he had accessed and viewed bestiality and child pornography involving males and females as young as 11 years old despite understanding it was illegal to do so." *Id.* The complaint further alleges that defendant made post-arrest statements relating to the creation and trafficking of child pornography but does so in a conclusory fashion.[1] *Id.* During that search, agents recovered a cellphone that contained "approximately 1,000 photos and approximately 954 videos, substantially all of which depict pornography and many of which depict child pornography and bestiality." *Id.* at ¶ 8.

**Procedural History and Additional Proffered Facts**

Arrested on March 9, defendant was brought before Judge Wicks for an initial appearance and detention hearing. The Government conceded that there was a limited risk of flight. DE 9 at 8. Based solely on the charge in the complaint, the Government asserted that defendant faced a five-year mandatory minimum sentence, adding that the facts contained therein suggested enticement of minors and production of child pornography, such that the mandatory minimum could be as high as 15 years. *Id.* at 9. However, the Government focused the argument for detention on defendant's alleged "active victimization of certain minor individuals." *Id.* at 10. In response, the defendant offered a substantial

---

[1] *Cf.* DE 9 at 11-12 (AUSA statement that "[t]here are screen recordings of the defendant *almost* in a video chat or a Zoom setting regarding himself with a minor female that is being enticed and coerced it to performing sexual activities for the purpose of him making a video") (emphasis added). In light of the italicized language, the import of this statement remains unclear.

bail package which included property and responsible suretors. *Id*. at 14. Defendant also agreed to all conditions of release contained in the Pretrial Services Report, which recommended release on a moderate bond on a series of conditions, including home detention and limited internet access only as necessary for employment and/or school purposes, if any. *Id.* at 14, 17. Judge Wicks conducted a thorough inquiry, raising concerns about defendant's potential access to electronic devices and the fact that his girlfriend, who also resides in the home, was not present and not being offered as a suretor. *Id.* at 20-29. It was also revealed that the defendant had made efforts to conceal the cell phone containing incriminating material from the investigating agents as well as his family members. *Id.* at 29-30.

Judge Wicks determined that, on balance, there was both a potential danger to the community and risk of flight such that no combination of conditions could avert both risks. *Id.* at 32. Judge Wicks entered a written order with findings stating that the defendant has overcome the burden of the presumption, but that no set of conditions would reasonably assure defendant's return to court and the safety of the community. DE 7 at 2-3.

The next day, this Court held a hearing regarding defendant's appeal of Judge Wick's order. DE 11. Because of the rapidity with which this hearing was scheduled, the defendant could not be made available, and his attorney waived his appearance with his express consent. DE 12 at 2-3.[2] At that hearing, the defendant's girlfriend appeared to assure the Court that she would agree to protect her electronic devices from the defendant upon his release. *Id.* at 8. As to the electronic devices, it was also revealed that, in addition to the parents' cell phones discussed the day before, the defendant's residence also contained an iPad and a smart TV. *Id.* at 12. Defendant's counsel also proffered the fact that the defendant's grandmother, who lives nearby, volunteered to stay with the defendant during the day while the other residents of the home were at work. *Id.* at 14.

---

[2] The Court repeatedly offered to hold a second hearing in the defendant's presence, and reserved decision to allow time to make such arrangements. DE 12 at 3, 33-34, 36-7, 41-42. However, defendant did not request a further hearing.

While the Government represented that forensic review was ongoing, preliminary results suggested that defendant possessed pornographic material – a portion of which constituted child pornography – as early as 2018. *Id*. at 24. The defendant initially lied to the searching agents about the number of electronic devices he possessed, stating he only owned one cell phone. *Id.* After agents discovered the second cell phone (full of images and videos of pornography, including child pornography, and near its storage capacity) hidden under defendant's mattress, the defendant acknowledged ownership and admitted that he had kept the existence of that phone concealed from other members of the household. *Id.* The collection amassed on that second cell phone "includes images and videos of children as young as three years old engaging in sexual acts with animals." *Id*. at 25. Agents also discovered evidence that the defendant's electronic devices were connected to an Apple watch that was not recovered during the search. *Id.* at 38.

**Discussion**

In reviewing Judge Wicks' detention order, this Court must determine whether, as relevant here, the Government has demonstrated by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *United States v. Reiner*, 468 F. Supp. 2d 393, 396 (E.D.N.Y. 2006). Charges involving the possession and production of child pornography give rise to a statutory presumption that no such conditions exist. *See* 18 U.S.C. § 3142(e)(3)(B). That provision creates only a "'limited burden of production,' under § 3142(e)(3) of the Bail Reform Act to rebut the presumption of detention." *United States v. Deutsch*, 822 F. App'x 35, 36 (2d Cir. 2020) (quoting *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020)). As the Second Circuit recently observed:

> This presumption may be rebutted by the defendant, who "bears a limited burden of production . . . by coming forward with evidence that he does not pose a danger to the community." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

4

> "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.*

*United States v. Mattis*, 963 F.3d 285, 290–91 (2d Cir. 2020). In *Mercedes,* the Second Circuit reiterated that:

> To determine whether the presumptions of dangerousness and flight are rebutted, the district court considers:
> (1) the nature and circumstances of the crime charged;
> (2) the weight of the evidence against the defendant;
> (3) the history and characteristics of the defendant, including family ties, employment, community ties, past conduct;
> (4) the nature and seriousness of the danger to the community or to an individual.

*United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citing 18 U.S.C. § 3142(g)). "In applying the factors to any particular case, the court should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987); *United States v. Valerio*, 9 F. Supp. 3d 283, 288 (E.D.N.Y. 2014). At the same time, "[a] district court is instructed to order the pre-trial detention of a defendant if, after a hearing, the judge 'finds that no condition or combination of conditions will reasonably assure the [ ] the safety of any other person and the community.'" *Mattis*, 963 F.3d at 290 (quoting 18 U.S.C. § 3142(e)(1)).

**The Nature and Circumstances of the Offense and Weight of the Evidence**

As set forth in the complaint, further supported by the proffer material, the defendant faces serious charges that give rise to a statutory presumption. As Judge Bianco observed:

> The reason for this presumption is clear. "No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children." *United States v. Schenberger*, 498 F.Supp.2d 738, 742 (D.N.J. 2007) (*citing United States v. MacEwan*, 445 F.3d 237, 250 (3d Cir. 2006)). As the Third Circuit has pointed out in connection with Congress's findings on

5

>Section 2251, which the court viewed as closely related to Section 2252A, "Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" *MacEwan,* 445 F.3d at 250 (citing the Child Pornography Prevention Act of 2006, Pub.L. No. 104–208 § 121, 110 Stat. at 3009, 3009–27 (1996)).

*Valerio*, 9 F. Supp. 3d at 289. Here, based on the available information at this juncture, it appears that persuasive evidence supports defendant's possession and distribution of child pornography. The defendant allegedly conducted these activities on a scale and using means that are extremely troubling. The evidence adduced via proffer suggests that he possessed thousands of images and videos, some portion of which constituted child pornography.

**The History and Characteristics of the Defendant**, **Family and Community Ties, Employment, And Past Conduct**

Part of the showing made by defendant suggests strong family ties. His parents were willing to post their home to secure his release, and other family members and his paramour came to court to show their support. His employment history is unremarkable. However, given the circumstances of this case, such evidence proves insufficient to remediate the serious dangers presented by this defendant. *United States v. Savader*, 944 F. Supp. 2d 209, 215 (E.D.N.Y. 2013) ("Because of the unique circumstances of this case, I find that this [community and family] support, though an important consideration, cannot overcome the serious risk of danger to the victims.").

Past conduct proves somewhat more complex. The defendant has no documented history of arrests or criminal history, again weighing in his favor. However, the information proffered concerning the size, content and longevity of his pornography collection, some portion of which represents child pornography and bestiality, proves telling. The information received at the hearing suggests that over a period of years the defendant amassed a collection consisting of nearly

6

2,000 images and videos, many of which are illegal, which was stored on a cellphone hidden from his family and, initially, concealed from law enforcement. Assembling this collection demonstrates a level of motivation and commitment that raises concerns.

### The Nature and Seriousness of the Danger to the Community

Critical to this analysis is the question of assuring the safety of the community. Drawing from the language of the Bail Reform Act, counsel for defendant argues:

> And the question becomes . . . how to reasonably assure the safety of the community reasonably. And I focus on those words because they're very important. There is no 100 percent in anything in any bail determination.

DE 12 at 11; *cf. id.* at 32-33. This argument, reflecting recent contentions relating to the Bail Reform Act of 1984,[3] may well misapprehend the nature of that provision. As the United States Supreme Court held:

> Responding to "the alarming problem of crimes committed by persons on release," Congress formulated the Bail Reform Act of 1984, as the solution to a bail crisis in the federal courts. The Act represents the National Legislature's considered response to numerous perceived deficiencies in the federal bail process. By providing for sweeping changes in both the way federal courts consider bail applications and the circumstances under which bail is granted, Congress hoped to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released."
> 
> \*          \*          \*          \*
> 
> In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception. The Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel.

*United States v. Salerno*, 481 U.S. 739, 742, 755 (1987) (citations omitted).

---

[3] Siegler & Zunkel, "Rethinking Federal Bail Advocacy to Change the Culture of Detention," *The Champion*, July 2020 at 51 ("the defense does not have to guarantee that the client will appear or is not a danger; the question is simply whether there are conditions of release that will 'reasonably assure' appearance and safety").

There is no mathematical formula to calculate a reasonable assurance of the community's safety. A fair assessment of those risks, though, begins with an examination of the nature of the potential harm. As the Supreme Court has observed, "[c]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Even mere possession and distribution of child pornography – which appears well-established in this case based on the information proffered – presents serious (even if not irremediable) concerns:

> The ease with which a person can access and distribute child pornography from his home—often with no more effort than a few clicks on a computer—may make it easier for perpetrators to delude themselves that their conduct is not deviant or harmful. But technological advances that facilitate child pornography crimes no more mitigate the real harm caused by these crimes than do technological advances making it easier to perpetrate fraud, traffic drugs, or even engage in acts of terrorism—all at a distance from victims—mitigate those crimes.

*United States v. Reingold*, 731 F.3d 204, 216–17 (2d Cir. 2013) ("we cannot view the distribution of child pornography, however accomplished, as anything but a serious crime that threatens real, and frequently violent, harm to vulnerable victims"). As Judge Bianco noted in the *Valerio* case, which involved alleged sexual abuse of children both physically and through the deployment of remote electronic communications, the defendant there posed "an extreme danger to children and the community generally." 9 F Supp. 2d at 289.

Moreover, serious bail violations by those charged with child pornography offenses are far from unprecedented. *See, e.g.*, *United States v. DiMartino*, No. 21-cr-81, 2022 WL 761511, at *1 (2d Cir. Mar. 14, 2022) (defendant "violated his bail conditions by having unsupervised contact with a young child [and] subsequently attempted to persuade the child's father to make false statements about his conduct"); *United States v. Escobosa*, No. 16-cr-6, 2017 WL 4236554, at *3 (E.D.N.Y. Sept. 19, 2017), *aff'd in part*, 791 F. App'x 214 (2d Cir. 2019) (revocation of defendant's bail based on use of unmonitored computer, boasting about bypassing monitoring

software installed by Pretrial Services and setting up a child pornography website while on supervision).

This case offers something even more troubling: evidence supporting a strong inference that defendant engaged in the production of this material through the predatory conduct using social media.[4]  Based on the statements made by defendant to the undercover agent, there is reason to believe that he deployed web-based communications to convince children – through subterfuge, enticement and extortion – to engage in and electronically record and transmit images of sexual activities.  This aspect of the case significantly increases the risk of danger, as the defendant, afforded access to increasingly ubiquitous technology, could continue such conduct with devastating results.  Here, the proposed safeguards prove too insubstantial as measured against the potentially catastrophic risks.

Counsel points to Judge Block's decision in *United States v. Deutsch*, No. 18-cr-502, 2018 WL 6573321, at *1 (E.D.N.Y. Dec. 13, 2018) for the proposition that electronic predators do not present a danger to the community.  In that case, Judge Block drew a distinction between cyber predation and the physical molestation of children to produce child pornography, noting:

> while Deutsch's charged conduct is deplorable, and the potential number of victims staggering, the conduct is alleged to have taken place solely through Internet communication with minors he found online.  Deutsch is not accused of coming into any physical contact with children or facilitating such contact by others. . . . Embracing the government's argument in this case would amount to setting a *de facto* rule that anyone charged with similar conduct must be held in pretrial detention.

*Id*. at *2.  I find *Deutsch* unpersuasive.  First, this language ultimately proves to be *dicta*, as Judge Block held Deutsch without bail as a flight risk.  *Id.* at *2–3.  More importantly, the dangers

---

[4] As noted at the hearing, the statements, almost unquestionably made by defendant to the undercover agent, could represent false *braggadocio* on the part of the defendant.  Since defendant's involvement in such production represents a significant basis for the determination made herein, should further investigation reveal that defendant was not, in fact, involved in such conduct, the Court is prepared to entertain a supplemental bail application.

9

presented by electronic sexual predatory conduct cannot be minimized – offenders engaging in such conduct unquestionably present greater dangers to children in the community than individual who possess or trade pre-existing images. Paradoxically, because of the widespread availability of web accessible devices, the danger presented by such defendants proves increasingly more difficult to remediate. *Valerio*, 9 F. Supp. 3d at 292 ("by the click of a computer key or tap of a touchscreen on a mobile phone, defendant could cause the same type of extreme harm to children and the community that he is alleged to have committed in the instant case.").

In *Deutsch*, Judge Block raised the concern that "[e]mbracing the government's argument in this case would amount to setting a *de facto* rule that anyone charged with similar conduct must be held in pretrial detention." 2018 WL 6573321, at *2. Of course, the law requires an individualized determination. As Judge Bianco has observed:

> Although the vulnerability of home detention to the use of electronic devices by defendants to commit illegal activities obviously carries across many types of violent activities, that vulnerability must be weighed in each individual case in conjunction with all of the other factors that the Court must consider under the Bail Reform Act. Thus, each situation is case-specific.

*Valerio,* 9 F. Supp. 3d at 297. In this case, the factors established by the Government here by clear and convincing evidence demonstrate that the defendant represents a danger to the community and that no combination of conditions can reasonably mitigate those risks. These include the nature of the underlying charges, the apparent strength of the evidence, the defendant's apparent admission to electronic cyberstalking of children in aid of the production of child pornography, defendant's possession of a collection of thousands of pornographic images and videos (including child pornography and bestiality), the concealment of the device containing these images from his family and the uncertainty surrounding the Internet accessible devices in defendant's residence, including the missing Apple watch.

**CONCLUSION**

Based on the foregoing, after *de no*vo consideration, Judge Wicks' pretrial detention order is AFFIRMED.

**SO ORDERED.**

Dated: March 22, 2022
Central Islip, New York

                                                /s/ Gary R. Brown
                                                HON. GARY R. BROWN
                                                UNITED STATES DISTRICT JUDGE